The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FIFTEEN TWENTY-ONE SECOND AVENUE CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br>Plaintiff,<br><br>v.<br><br>VIRACON, LLC, a Minnesota limited liability company, APOGEE ENTERPRISES, INC., a Minnesota corporation, QUANEX IG SYSTEMS, INC., an Ohio Corporation, INSULATING GLASS CERTIFICATION COUNCIL, INC., an Illinois corporation, and DOES 1-20,<br>Defendants. | NO. 2:23-cv-1999<br><br>**ORDER DENYING QUANEX IG SYSTEMS, INC.'S MOTION TO DISMISS** |

## I.   INTRODUCTION

This matter comes before the Court on a Motion to Dismiss under Federal Rule 12(b)(2) for lack of personal jurisdiction, filed by Defendant Quanex IG Systems, Inc. ("Quanex"). Having reviewed the briefs filed in support of and in opposition to this motion, the Court finds and rules as follows.

ORDER DENYING QUANEX'S
MOTION TO DISMISS

- 1

## II.   BACKGROUND

This lawsuit concerns the 38-story building located at 1521 Second Avenue in Seattle, Washington. That building is owned by Plaintiff Fifteen Twenty-One Second Avenue Condominium Association, a homeowner's association composed of owners of the residential and commercial units in that building. Am. Compl., ¶¶ 12, 1. Plaintiff brings this lawsuit claiming that the double-paned Insulated Glass Units ("IGUs") that make up the exterior curtain wall of the 1521 Second Avenue building were defectively designed and constructed. More specifically, Defendant Viracon LLC ("Viracon"), which manufactured and distributed the IGUs installed in Plaintiff's building, used "gray structural silicone with a primary sealant," known as "JS780 Gray," manufactured and sold to Viracon by Defendant Quanex IG Systems, Inc. ("Quanex"). According to Plaintiff, the JS780 sealant "looks gray because it lacks Carbon Black, a component that protects from the sun's ultraviolet rays." Am. Comp., ¶ 14. Unlike sealant made with Carbon Black, JS780 Gray breaks down when exposed to ultraviolet rays. This process has caused the seal between some of the IGU panes at 1521 Second Avenue to fail and in some cases, the glass panes to shatter. As a result, according to Plaintiff, all of the approximately 7,850 IGUs at the 1521 Second Avenue building must be replaced. *Id*., ¶ 60.

Now seeking to recover the cost of replacing the allegedly defective IGUs, Plaintiff asserts multiple state-law claims against various entities involved in their manufacture, marketing, and distribution. Plaintiff alleges that these Defendants were aware of the defects in the IGUs' construction, and conspired to actively conceal these known defects from Washington consumers. Am. Compl., ¶¶ 16-27. It further alleges that Defendants obtained a "false and misleading" "certification of quality" stamp on every IGU by Defendant Insulting Glass Certification Council,

Inc. ("IGCC"), and subsequently met and agreed among each other, in writing, not to alert IGU purchasers in Washington that the certification of quality was false. *Id*.

Relevant to the instant motion, "Defendant Quanex IG Systems, Inc. is an Ohio corporation headquartered in Texas and at all relevant times was doing business as a manufacturer of engineered and building products and sales in the State of Washington, including by having a physical presence and at least two offices located in the State of Washington." Am. Compl., ¶ 8. Plaintiff alleges that Quanex sold JS780 Gray to Viracon for use in IGUs that Quanex was aware "were sold and installed in buildings all over the nation, including in Washington," despite having been informed as early as 2008 that the sealant was defective. *Id*. ¶ 24. Plaintiff further alleges that Quanex—with knowledge "that Washington consumers had a large volume of purchases" of the JS780 Gray IGUs, and with knowledge that such "consumers in Washington had warranty rights for which Quanex IG Systems, Inc. would have economic obligation to indemnify,"— entered into an agreement with the other Defendants to conceal the potential for failure of the sealant from those consumers, agreeing "to perpetuate the false IGCC certification to Washington consumers and suppress and conceal the truth." *Id*.

Plaintiff has asserted a single cause of action against Quanex: "Civil Conspiracy to Violate, and Violation of, the Washington Consumer Protection Act (RCW 19.86)." Am. Compl. ¶¶ 16-27. By the instant motion, Quanex now moves for dismissal for lack of personal jurisdiction.

### III.   DISCUSSION

**A.   Standard on a Motion to Dismiss Under Federal Rule 12(b)(2)**

When a defendant invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss

1  for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing of

2  personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d

3  1122, 1128–29 (9th Cir. 2003). A plaintiff builds a prima facie case by stating facts that, if true,

4  would support the court's exercise of jurisdiction. *Id*. at 1129. The court need not accept a

5  plaintiff's bare allegations if the defendant controverts them with evidence. *See AT & T Co. v.*

6  *Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996). However, in a facial attack on

7  the sufficiency (as opposed to the truth) of the plaintiff's allegations—such as here, where

8  Quanex has challenged jurisdiction without disputing Plaintiff's allegations—the "uncontroverted

9  allegations in plaintiff's complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor*

10 *Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

11      "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction."

12 *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S.

13 117, 125 (2014)). The Washington Consumer Protection Act ("CPA"), under which Plaintiff

14 brings its sole cause of action against Quanex, contains its own long-arm provision, which

15 "extends the jurisdiction of Washington courts to persons outside its borders" and "is intended to

16 operate to the fullest extent permitted by due process." *State v. LG Elecs., Inc.*, 185 Wn. App.

17 394, 410 (2015), *aff'd*, 186 Wn. 2d 169 (2016) (citation omitted). Thus the Court's "inquiry

18 centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211.

19 Due process, in turn, "requires that the defendant 'have certain minimum contacts' with the forum

20 state 'such that the maintenance of the suit does not offend traditional notions of fair play and

21 substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see also*

22 *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

23

24 ORDER DENYING QUANEX'S
   MOTION TO DISMISS

25  - 4

The Ninth Circuit employs a three-part test to assess whether a party has sufficient minimum contacts with the forum state to subject it to specific personal jurisdiction:[1] (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Picot*, 780 at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802. Plaintiff has the burden of demonstrating the first two elements, after which the defendant must show exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

### B. Whether Plaintiff Has Sufficiently Stated Facts Supporting Element of "Purposeful Direction"[2]

Under the test outlined above, for claims sounding in tort such as Plaintiff's CPA claims against Quanex, a plaintiff must first establish that the defendant "purposefully directed" its activities toward the forum state. *Schwarzenegger*, 374 F.3d at 802. The purposeful direction requirement for specific personal jurisdiction is analyzed in intentional tort cases under the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). The elements of the *Calder* effects test require Plaintiff here to have sufficiently alleged that Quanex: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) that caused harm the defendant knows

---

[1] Personal jurisdiction exists in two forms: general and specific. *Picot*, 780 F.3d at 1211. Plaintiff here has not argued that the Court has general jurisdiction over Quanex, and the Court's analysis therefore focuses on specific jurisdiction.

[2] In its motion Quanex has not raised a challenge to the second two elements of the "minimum contacts" analysis.

ORDER DENYING QUANEX'S
MOTION TO DISMISS

- 5

is likely to be suffered in the forum state. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

In seeking dismissal for lack of personal jurisdiction, Quanex argues that Plaintiff's allegations fall short of satisfying the second prong of the *Calder* test. Quanex MTD at 6.[3] Quanex cites as insufficient Plaintiff's allegations that Quanex "was aware that Viracon, LLC's IGUs with JS780 Gray were sold and installed in buildings all over the nation, including Washington," and that "Washington consumers had a large volume of purchases and potential future purchases of Viracon, LLC IGUs." *Id*. (citing Am. Compl., ¶¶ 8, 24). As Quanex correctly points out, this Court has already determined that allegations nearly identical to these brought by another plaintiff in an earlier case against Quanex, based on the same allegedly defective IGUs using the same Quanex sealant, failed to meet the requisite minimum contacts standard set by *Calder* and its progeny. *See King Cnty. v. Viracon, Inc*., No. 2:19-CV-508-BJR, 2019 WL 5569675, at *3–5 (W.D. Wash. Oct. 29, 2019). In *King County*, this Court squarely held that the use of Quanex's product in Viracon's IGUs sold nationwide—including in Washington—was, standing alone, insufficient to establish Washington courts' jurisdiction over Quanex. *Id*. at *3 (finding insufficient plaintiff's allegations that Quanex "derived substantial revenue from material and products" that it had sold to Viracon in Minnesota, that were "supplied" and "placed" in "the stream of commerce within Washington," and that "caused injury and damages in the State"). This was true despite Quanex's knowledge that Viracon's IGUs containing Quanex's product would be sold nationwide, and "may reach" Washington consumers. *Id*. ("King County argues

---

[3] Quanex has not challenged the sufficiency of Plaintiff's allegations going to the other two prongs of the *Calder* test. It is not disputed that Plaintiff alleges that Quanex committed intentional acts, and that those acts caused Plaintiff harm that Quanex knew would be suffered in Washington. Accordingly, the Court concludes Plaintiff has satisfied the first and third prongs of the *Calder* test.

ORDER DENYING QUANEX'S
MOTION TO DISMISS

- 6

that Defendants' sale of their product to Viracon with the knowledge that the product would be used in Viracon's IGUs is sufficient contact for specific jurisdiction. The Court rejects this argument because it ignores the well-established rule that a defendant's mere awareness that its product will be placed into the stream of commerce and, therefore, may reach the forum state is insufficient for the exercise of specific jurisdiction.") (citations omitted). The facts alleged in *King County* amounted to little more than a "stream of commerce" theory of personal jurisdiction which, without "something more," courts have repeatedly rejected. *Id*. (citing *J. McIntyre, Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011)) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.").

In the case now before the Court, however, Plaintiff has alleged the "something more" that courts have required to establish jurisdiction over an out-of-state defendant. In particular, as referenced above, Plaintiff alleges that Quanex conspired with the other Defendants to conceal, from actual Washington purchasers of Viracon's IGUs, defects of which Defendants were aware. Plaintiff alleges that Quanex was aware of "the defective performance of JS780 Gray after installation on buildings as early as 2008," and

> was aware that Washington consumers had a large volume of purchases and potential future purchases of Viracon, LLC IGUs with JS780 Gray misrepresenting quality through IGCC certification. With this specific knowledge that the IGCC certification of JS780 Gray IGUs was misleading, and with knowledge that consumers in Washington had warranty rights for which Quanex IG Systems, Inc. would have economic obligation to indemnify, Quanex IG Systems, Inc. agreed to perpetuate the false IGCC certification to Washington consumers and suppress and conceal the truth as confidential. . . .
>
> Later, and in continuance of the object of the conspiracy, during the warranty period of after installation of the same IGUs on the Fifteen Twenty-One Second Avenue building, Viracon, LLC, Apogee Enterprises, Inc., and Quanex IG Systems, Inc. met and agreed in writing to conceal from consumers, including, Fifteen Twenty-One Second Avenue Condominium Association, the known seal failure defects and

ORDER DENYING QUANEX'S
MOTION TO DISMISS

- 7

the false IGCC certification. In furtherance of this agreement, IGCC failed to issue any sort of consumer notice indicating that its IGCC certification was invalid.

Am. Compl., ¶¶ 24, 26. In *Walden v. Fiore*, the Supreme Court emphasized that under the *Calder* effects test, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. 277, 278 (2014). The Court concludes that in alleging that Quanex's actions knowingly and deliberately targeted a "large volume" of actual (rather than hypothetical) Washington consumers who held warranties for which Quanex may have been liable, Plaintiff has alleged that Quanex not only caused injury to Plaintiff, but deliberately established a connection to the forum state of Washington as well, meeting the standard articulated in *Walden*.

The Court acknowledges that the plaintiff in *King County* also alleged that Quanex failed to disclose known defects in Viracon's IGUs, constituting an alleged fraud. *See, e.g., King County v. Viracon*, C19-508BJR, Am. Compl., Dkt. No. 12, ¶ 11.2 ("Quanex and [its predecessor] TruSeal's failure to warn that the Gray PIB and IG Units would not be suitable for their intended purposes and that the performance of the Gray PIB would not endure as intended or required resulted in its incorporation into IG Units, resulted in the harm King County claims of herein."). There are several critical distinctions between the allegations in *King County* and those made here. For example, Plaintiff here has alleged that Quanex's concealment had an impact on a "large volume" of IGU purchasers in Washington, not just the plaintiff, a single consumer; that Quanex was aware these Washington consumers had "warranty rights" on those IGUs, for which Quanex might be liable; and that Quanex engaged in deliberate and ongoing behavior that injured and continued to injure Washington consumers after they had purchased the allegedly defective IGUs. This is not a fortuitous sequence of actions undertaken primarily by third parties, resulting in

ORDER DENYING QUANEX'S
MOTION TO DISMISS

- 8

purchases by some unknown volume of nameless consumers in the forum state. The allegations in this case comprise a deliberate act by Quanex, expressly aimed at a known and substantial group of Washington consumers, who had already purchased IGUs made with Quanex's product and whose warranty rights, Plaintiff alleges, were directly affected. The Court concludes that these allegations constitute the "something more" required under *Walden* and other case law to make out a prima facie case of minimum contacts with the forum state, Washington, not just with a plaintiff who happens to be located here.

Finally, the Court of course does not conclude that Plaintiff's allegations are true; merely that Quanex has failed to dispute them and that, taken as true, they are sufficient to meet Plaintiff's burden of stating a prima facie case of personal jurisdiction over Quanex. Mindful of the Washington Supreme Court's observation that "to dismiss at this stage before relevant jurisdictional discovery would be inconsistent with the legal standards we apply under [Civil Rule] 12(b)," the Court concludes that under the facts alleged, Quanex's Motion to Dismiss should be denied. *State v. LG Elecs., Inc.*, 186 Wn.2d at 184. If, after conducting discovery, Quanex is able to dispute the truth or accuracy of Plaintiff's jurisdictional allegations, or otherwise demonstrates that the Court's exercise of jurisdiction "is unreasonable and inconsistent with notions of fair play and substantial justice," there is nothing that would prevent it from moving at that point to dismiss itself from this lawsuit. *Id.* ("Nothing in our opinion precludes the Companies from renewing their motions after further discovery bearing on relevant facts.").

## IV.   CONCLUSION

For the foregoing reasons, Defendant Quanex's Motion is DENIED. In addition, Plaintiff's Motion for In Camera Review, Dkt. No. 60, is DENIED as moot given the Court has

denied the Motion to Dismiss.

DATED this 25th day of June, 2024.

*Barbara J. Rothstein*
_____
Barbara Jacobs Rothstein
U.S. District Court Judge