The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIFTEEN TWENTY-ONE SECOND AVENUE CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,
Plaintiff,

v.

VIRACON, LLC, a Minnesota limited liability company, APOGEE ENTERPRISES, INC., a Minnesota corporation, QUANEX IG SYSTEMS, INC., an Ohio Corporation, INSULATING GLASS CERTIFICATION COUNCIL, INC., an Illinois corporation, and DOES 1-20,
Defendants.

NO. 2:23-cv-1999

**ORDER (1) GRANTING APOGEE ENTERPRISES, INC.'S MOTION TO DISMISS AND (2) DENYING FIFTEEN TWENTY-ONE SECOND AVENUE CONDOMINIUM ASSOCIATION'S MOTION FOR *IN CAMERA* REVIEW**

## I.   INTRODUCTION

This matter comes before the Court on (1) a Motion to Dismiss under Federal Rules 12(b)(2) and 12(b)(6), filed by Defendant Apogee Enterprises, Inc. ("Apogee"), Dkt. No. 69; and (2) a Motion for *In Camera* Review, Setting of Evidentiary Hearing, and Jurisdictional Discovery, filed by Plaintiff Fifteen Twenty-One Second Avenue Condominium Association ("Plaintiff"), Dkt. No. 77. Apogee asks the Court to dismiss it for lack of personal jurisdiction or, in the alternative, to dismiss Plaintiff's claims against it for failure to state a claim on which relief can

be granted. Plaintiff seeks leave to conduct jurisdictional discovery, and asks the Court to hold an evidentiary hearing and to review, *in camera*, dozens of documents marked "confidential." Having reviewed the briefs filed in support of and in opposition to Apogee's motion, the Court finds and rules as follows.

## II.   BACKGROUND[1]

This lawsuit concerns the 38-story building located at 1521 Second Avenue in Seattle, Washington, which is owned by Plaintiff Fifteen Twenty-One Second Avenue Condominium Association. Am. Compl., ¶¶ 12, 1. Dkt. No. 27. Plaintiff brings this lawsuit claiming that the double-paned Insulated Glass Units ("IGUs") that make up the exterior curtain wall of the 1521 Second Avenue building were defectively designed and constructed by Defendant Viracon LLC ("Viracon"), a wholly owned subsidiary of Apogee. *Id*., ¶¶ 6, 7. The IGUs were made using a gray sealant, manufactured by Defendant Quanex IG Systems, Inc., that Plaintiff alleges is failing. Each IGU bears the stamp of Defendant Insulating Glass Certification Council, Inc. ("IGCC"), which Plaintiff claims falsely certifies the IGUs' quality. *Id*., ¶¶ 24, 18. By this lawsuit, Plaintiff seeks recovery of damages it claims are associated with failure of the IGUs in its building.

## III.   DISCUSSION

### A.   Standard on a Motion to Dismiss Under Federal Rule 12(b)(2)[2]

When a defendant invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d

---

[1] For a more detailed factual background, see Order Denying Quanex's Motion to Dismiss, Dkt. No. 65.
[2] Because the Court dismisses Apogee for lack of personal jurisdiction, it does not reach Apogee's Federal Rule 12(b)(6) motion to dismiss Plaintiff's claims on the merits.

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW
- 2

1122, 1128–29 (9th Cir. 2003). A plaintiff builds a *prima facie* case by stating facts that, if true, would support the court's exercise of jurisdiction. *Id*. at 1129. Although a plaintiff cannot simply rest on the bare allegations in the complaint, the court must accept uncontroverted allegations in the complaint as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). The Washington Consumer Protection Act ("CPA"), under which Plaintiff brings its sole cause of action against Apogee, contains its own long-arm provision, which "extends the jurisdiction of Washington courts to persons outside its borders" and "is intended to operate to the fullest extent permitted by due process." *State v. LG Elecs., Inc.*, 185 Wn. App. 394, 410 (2015), aff'd, 186 Wn. 2d 169 (2016) (citation omitted). Thus, the Court's "inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211. Due process, in turn, "requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945)); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

**B. Specific Jurisdiction: Whether Plaintiff Has Sufficiently Stated Facts Supporting Element of "Purposeful Direction"**

The Ninth Circuit employs a three-part test to assess whether a party has sufficient minimum contacts with the forum state to subject it to specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 3

the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Picot*, 780 at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802). Plaintiff has the burden of demonstrating the first two elements, after which the defendant must show exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

### 1. The *Calder* "Effects" Test: Whether Defendant Committed an Intentional Act Expressly Aimed at Washington

Under the test outlined above, a plaintiff asserting a claim sounding in tort must first establish that the defendant "purposefully directed" its activities toward the forum state. *Schwarzenegger*, 374 F.3d at 802. The purposeful direction requirement is analyzed under the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). The elements of the *Calder* effects test require Plaintiff to have sufficiently alleged that Apogee: (1) committed an intentional act, (2) expressly aimed at Washington, (3) that caused harm that Apogee knew was likely to be suffered in Washington. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The Complaint here contains allegations that fall loosely into two separate categories: (1) actions of Viracon that Plaintiff suggests for jurisdictional purposes should be imputed to its parent corporation Apogee, and (2) actions that Apogee itself took. After examining the allegations, the Court concludes that neither category supports an inference that Apogee committed intentional acts "expressly aimed" at Washington, or justifies the exercise of this Court's jurisdiction over Apogee.

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 4

**2. Whether Viracon's Alleged Actions Can Be Imputed to Apogee**

Plaintiff first alleges that Apogee "has via its agents, subsidiaries, and co-conspirators . . . conducted and continues to conduct business in the State of Washington, has entered into the State of Washington for the purposes of: selling its products and services in the State of Washington; investigating and secretly surveilling its products including Insulated Glass Units in the State of Washington; defrauding end-users of the Insulated Glass Units; and concealing the defects of said IGUs from those end-users." Am. Compl., ¶ 7. Elsewhere in the Amended Complaint, Plaintiff alleges that "Viracon, LLC, including as the agent and for the benefit of Apogee Enterprises, Inc., never properly performed the IGCC testing to achieve certification." *Id.*, ¶ 20.

The actions of a subsidiary cannot be imputed to its parent for jurisdictional purposes, absent a showing that "in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). To establish jurisdiction based on this "alter ego" theory, a plaintiff must demonstrate "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id*. This test requires a showing of "pervasive control" of the subsidiary by the parent "to such a degree as to render the latter the mere instrumentality of the former" and can only be met where a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id*.

Apogee has submitted the testimony of its general counsel, averring plainly that "Apogee's subsidiaries," including Viracon, "are separately incorporated, operated, and

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 5

managed." Decl. of Meghan Elliot, ¶ 5. In response, Plaintiff fails to acknowledge the high bar the "pervasive control" standard sets. It relies exclusively on two SEC filings, in which Apogee has stated, for example, "[w]e generate revenue from the design, engineering and fabrication of architectural glass, curtainwall, window, storefront and entrance systems, and from installing those products on non-residential buildings." Apogee Enterprises, Inc.'s Securities and Exchange Commission Form 10-K Annual Report, April 26, 2024, Ex. A to Req. for Jud. Not., Dkt. No. 82 at 30. This evidence—Apogee's use of "we" in referencing the activities of its subsidiaries—is insufficient to raise a dispute of fact regarding Plaintiff's alter-ego theory of jurisdiction. *See Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 926 (S.D. Cal. 2022) ("Although Bumble's SEC filings suggest that it likes to hold itself out to the public 'as a single operating segment,' (*see, e.g.*, Bumble Inc. Form 10-K at 116), such assertions fall short of suggesting that Bumble Trading is a mere instrumentality of Bumble Inc.") (citing *Ranza*, 793 F.3d at 1073-74). None of Plaintiff's allegations comes close to supporting an inference that Viracon is a "mere instrumentality" of Apogee, or that Apogee "dictates every facet" of Viracon's business. Accordingly, Viracon's actions cannot be attributed to Apogee for purposes of determining jurisdiction.

### 3. Whether Apogee's Intentional Acts Were Expressly Aimed at Washington

In the second category—alleged actions not of Viracon to be imputed to Apogee, but apparently of Apogee itself—Plaintiff alleges that Apogee "agreed to perpetuate the false IGCC certification to Washington consumers and suppress and conceal the truth as confidential." Am. Comp., ¶ 25. It further avers that Apogee, along with the other Defendants, "met and agreed in writing to conceal from consumers," including Plaintiff, "the known seal failure defects" in the

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 6

IGUs. *Id*., ¶ 26.

The allegations concerning Apogee's alleged participation in the purported conspiracy to conceal the false IGCC certification and IGU defects from consumers are inadequate in several respects. First, Washington courts have "rejected the conspiracy theory of long-arm jurisdiction, finding that the theory violates due process principles." *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1268 (W.D. Wash. 2005) (citing *Hewitt v. Hewitt*, 78 Wn. App. 447, 454–55 (1995)) ("If an out-of-state defendant's activities do not meet the test for imposition of either general jurisdiction or specific jurisdiction, traditional notions of 'fair play and substantial justice' would be abused by hailing that defendant into a local court on the mere claim that the defendant was a co-conspirator with a defendant whose activities do meet the test."). Furthermore, to meet the "purposefully directed" standards, intentional actions must be "*expressly aimed* at the forum state." *Calder*, 465 U.S. at 789. Thus, it is not enough that a defendant commits actions that foreseeably have an impact in the forum state. *Id*. ("The mere fact that [defendant] can 'foresee' that [its actions will] have an effect in [the forum state] is not sufficient for an assertion of jurisdiction."). Here, Apogee's alleged participation in the conspiracy was not "expressly aimed" at Washington consumers; at most, taking Plaintiff's allegations as true, Apogee's participation in the conspiracy happened to have an impact on those consumers among, allegedly, many others.

The circumstances of this analysis are materially distinct from those presented in the Court's Order Denying Defendant Quanex's Motion to Dismiss for lack of personal jurisdiction, on which Plaintiff's opposition heavily relies. *See* Dkt. No. 65 ("Quanex Order"). In the Quanex Order, the Court concluded "that in alleging that Quanex's actions knowingly and deliberately targeted a "large volume" of actual (rather than hypothetical) Washington consumers who held

ORDER GRANTING APOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW
- 7

1  warranties for which Quanex may have been liable, Plaintiff has alleged that Quanex . . .

2  deliberately established a connection to the forum state of Washington." *Id*., at 8. There is (and

3  could be) no allegation here that Washington consumers hold warranties on which Apogee could

4  be liable, meaning no such "connection" between Apogee and Washington consumers was

5  "deliberately established." Moreover, the Court found that Quanex's alleged participation in an

6  agreement to conceal the IGUs' defects from consumers was the "something more" needed to tip

7  the balance in favor of the exercise of jurisdiction—"more" meaning *in addition to* the fact that

8  Quanex manufactured the gray sealant that Plaintiff alleges caused the IGUs to fail. *Id*., citing

9  *Walden v. Fiore*, 571 U.S. 277, 278 (2014). ("The allegations in this case comprise a deliberate

10 act by Quanex, expressly aimed at a known and substantial group of Washington consumers, *who*

11 *had already purchased IGUs made with Quanex's product* and whose warranty rights, Plaintiff

12 alleges, were directly affected. The Court concludes that these allegations constitute the

13 "something more" required under *Walden*.") (emphasis added). Here, participation in the alleged

14 conspiracy is not "something *more*" tying Apogee to Washington, as there are no underlying

15 actions by Apogee to begin with. According to the only competent evidence before the Court,

16 Apogee, unlike Quanex, has not manufactured, sold, or otherwise participated in the distribution

17 of the IGUs to Washington consumers. Elliot Decl., ¶ 6 ("Apogee does not manufacture,

18 distribute, sell, or offer any product or service in Washington or in any other state."). Plaintiff's

19 attempt to apply the reasoning in the Quanex Order to Apogee's jurisdictional analysis is

20 unsupported and unavailing.[3] This Court lacks specific personal jurisdiction over Apogee.

---

[3] The jurisdiction-related allegations in Plaintiff's Complaint with regard to Apogee are materially identical to allegations that the plaintiff Village of Schaumburg made in a very similar lawsuit against these same defendants, filed in the Northern District of Illinois, in which that court dismissed Apogee for lack of personal jurisdiction.

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 8

**C.  General Jurisdiction: Whether Apogee Is "At Home" in Washington**

Plaintiff also asserts that this Court may exercise general jurisdiction over Apogee. A state court has general jurisdiction over a defendant that is "essentially at home" in the forum. *See Ford Motor Co. v. Montana Eighth Judicial District Court*, ___ U.S. ___, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)). Generally, a corporation is at home only in its place of incorporation and its principal place of business; only in an "exceptional case" will a corporation also be "at home" elsewhere. *Ford*, 141 S. Ct. at 1024; *Daimler*, 571 U.S. at 137. There is no dispute that Minnesota is both Apogee's state of incorporation and its principal place of business. Elliot Decl., ¶ 2; Am. Compl., ¶ 7 (Apogee "is a Minnesota corporation with its headquarters in Minnesota."). Even taking Plaintiff's disputed allegations as true, Plaintiff has alleged, at most, that Apogee has "a national presence throughout the United States" and "was doing business" in Washington. Am. Compl., ¶¶ 7. This falls short of alleging that Washington is Apogee's *principal* place of business, and the caselaw is clear that merely "doing business" in the forum is insufficient to establish general jurisdiction. *See Daimler*, 571 U.S. at 158 (Sotomayor, J., concurring) (rejecting plaintiffs' arguments that a foreign manufacturer was at home in California due to its "multiple offices, continuous operations, and billions of dollars' worth of sales" in the forum). Nor has Plaintiff argued or alleged facts that would support a conclusion (or even an inference) that this is an "exceptional case" justifying an

---

*Village of Schaumburg v. Viracon Inc., et al*., Case No. 22-CV-60 (N.D. Ill. 2022); *see* Dkt. No. 91, August 21, 2023 Mem. Op. at 29-32. In *Schaumburg*, the plaintiff's jurisdictional allegations included that Apogee's general counsel was "directly involved in claims arising out of Viracon's use of gray JS-780 primary sealant," and that Apogee was a party to a joint defense agreement with Viracon and Quanex concerning warranty claims based on the defective IGUs (likely, the same "written agreement" to which Plaintiff refers in this case). The court found that the facts alleged there did not support piercing the corporate veil, and concluded "[t]his court does not have personal jurisdiction over Apogee." *Id*. at 32. Plaintiff here has not acknowledged, let alone distinguished, the holding in *Schaumburg*, which given its nearly identical facts and circumstances related to Apogee's jurisdiction is persuasive.

ORDER GRANTING APOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 9

expansion to the general rule expressed above. The Court rejects Plaintiff's argument that Apogee is subject to the general jurisdiction of courts in Washington.

### D. Plaintiff's Motion for Jurisdictional Discovery

Plaintiff has filed a motion, concurrently with its opposition to Apogee's Motion to Dismiss, requesting: (1) leave to conduct limited jurisdictional discovery; (2) *in camera* review of dozens of documents in Plaintiff's possession (including entire deposition transcripts), some of which were subject to a protective order and have been marked "confidential" by Viracon and Quanex; and (3) an evidentiary hearing for purposes of presenting evidence that Plaintiff claims "requires oral testimony to contextually explain the conspiratorial conduct by Apogee," including "testimony and cross-examination of [five] current or former employees or agents of Apogee and Viracon." Dkt. No. 77 at 2.

The Court denies Plaintiff's requests for *in camera* review of documents in Plaintiff's possession and for an evidentiary hearing. First, while many of the documents that Plaintiff is asking the Court to review are marked confidential, Plaintiff fails to explain why it did not submit with its opposition to Apogee's Motion to Dismiss those *non-confidential* documents it is asking the Court to review. Second, although Plaintiff may have good reason not to file confidential documents in this proceeding,[4] there is no valid reason it did not include in its pleading (or at the very least in its response to Apogee's Motion to Dismiss) any allegations, presumably supported by those documents, that might have established this Court's jurisdiction. It bore the burden of doing so. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) ("In

---

[4] Apogee also suggests that Plaintiff could have filed the confidential documents under seal. Apogee Opp. at 2. Plaintiff has not explained why it did not avail itself of this option either.

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 10

opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."). Even now, Plaintiff simply fails to articulate what jurisdictional facts related to Apogee might be established by the evidence it is asking the Court to review. It appears that many, if not all, of the documents are related not to Apogee, but to Viracon and Quanex (*e.g.*, "Viracon-Quanex Meeting Notes" and emails between Quanex and Viracon), and were produced in proceedings in which Apogee was not even a party. Plaintiff repeatedly states that the documents and anticipated testimony would reveal information that is "critical" to establishing jurisdiction over Apogee, but apart from conclusory generalizations (*see, e.g.*, Pl.'s Mot. at 9, stating evidence would show "co-defendants herein directed their joint-efforts towards Washington consumers"), it does not state what that information is. In the absence of such explanation, the Court declines to authorize or participate in Plaintiff's proposed fishing expedition.

      The Court also denies Plaintiff's request for leave to conduct jurisdictional discovery. As Plaintiff itself argues, such discovery may be warranted under Federal Rule 7(b) "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Pl.'s Mot. at 8 (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). But Plaintiff has failed to articulate what material facts are controverted, or what allegations it believes it can (and must) support with additional evidence. "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants," as is the case here, "the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted).

ORDER GRANTING APPOGEE'S
MOTION TO DISMISS AND DENYING PLAINTIFF'S
MOTION FOR *IN CAMERA* REVIEW

- 11

As detailed above, the critical undisputed facts here establish first, that Apogee is not an alter ego of Viracon; the Court therefore cannot assert jurisdiction over the former based upon intentional acts of the latter. Second, even if Apogee was itself a party to a written agreement as part of a conspiracy to conceal IGU defects from consumers nationwide, that participation does not amount to an express aiming at Washington. Plaintiff has not described what additional evidence it hopes to discover that might alter these facts and conclusions and establish jurisdiction. Jurisdictional discovery is therefore not appropriate. *Terracom*, 49 F.3d at 560, 562. (Plaintiff not entitled to jurisdictional discovery because it "failed to demonstrate how further discovery would allow it to contradict" the specific denials made by the defendants that weighed against a finding of personal jurisdiction.).

Finally, the Court denies Plaintiff's request for leave to amend its Complaint. Plaintiff has not identified any additional allegations that might cure the deficiencies in its pleading, despite having thousands of pages of documents and deposition testimony in its possession. Moreover, in response to an earlier wave of motions to dismiss, Plaintiff has already amended its complaint once. Leave to amend is denied.

### IV.  CONCLUSION

For the foregoing reasons, Defendant Apogee's Motion to Dismiss is GRANTED, and Apogee is DISMISSED from this lawsuit. Plaintiff's Motion for *In Camera* Review is DENIED.

DATED this 24th day of September, 2024.

*Barbara J. Rothstein*
_____
Barbara Jacobs Rothstein
U.S. District Court Judge