UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FIFTEEN TWENTY-ONE SECOND AVENUE CONDOMINIUM ASSOCIATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>VIRACON, LLC, a Minnesota limited liability company, APOGEEE ENTERPRISES, INC., a Minnesota corporation, QUANEX IG SYSTEMS, INC., an Ohio Corporation, INSULATING GLASS CERTIFICATION COUNCIL, INC., an Illinois corporation, and DOES 1-20,<br><br>Defendant. | CASE NO. 2:23-cv-1999-BJR<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     Definitions and Scope**

The following protocol and definitions shall control the production of discoverable documents and electronically stored information when production commences. The following terms are defined:

    a.    "Document(s)" means electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing the same.

    b.    "Native File(s)" or "Native Format" means ESI that have an associated file structure defined by the creating or viewing application in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified.

    c.    "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

    d.    "Load File" means an electronic data file containing information identifying documents containing (i) an indication of which individual pages or files constitute each Document and relevant data relevant to each individual Document, including extracted metadata.

    e.    "OCR" means optical character recognition, generating a text from an image of text using software.

    f.    "Extracted Text" means all text content extracted from a Native File.

1   g. "Receiving Party" means the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

h. "Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

i. "Bates Number" means an identifier consists of a short two to eight letter prefix, associated with the Producing Party's name, followed by 6 numbers (e.g. ABCD000001). The prefix should include only letters, dashes, or underscores. The prefix and number should not be separated by a space. Each page in the production is assigned a unique, incremental Bates number. The prefix must be the same for all pages produced from the same Producing Party.

**C.    ESI Disclosures**

1.

c. Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

3. <u>Production Format:</u> Documents to be produced in response to requests for production propounded pursuant to Fed. R. Civ. P. 34 must be produced according to the following formats:

      a.    *Electronic Production of Paper Documents:* Documents that are maintained in paper format shall be scanned images at 300 DPI resolution, in text searchable PDF format that represents the full and complete information contained in the original Document. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately. Documents shall also be produced with the associated OCR text, and with a load file. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the image.

      b.    *Electronically Stored Information*: Document images shall be generated from electronic Documents in a set of color 300 DPI text searchable PDFs, one PDF file per document, that reflects the full and complete information contained on the original document, together with a load file containing required metadata. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

      c.    *File Structure*: The producing party shall produce the following sets of files for all produced documents:

      i.    <u>Load File:</u>

- Each production includes a .dat metadata load file, which is a delimited text file format. The first row of the file contains a list of metadata columns. Each subsequent row contains the metadata for a single document. Each column of each row contains one metadata value, with values encapsulated by a special "quote" character and columns separated by a special "separator" character throughout.
- The load file should use a thorn (þ, ASCII character 231) as a quote character and the special, non-printing character DC4 (ASCII character 20) as a separator.
- First line must contain the column/field names.
- The fields Begin Bates, End Bates, and NativePath must be present

- Each subsequent row must contain the metadata for one document
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in either ASCII, UTF-8, or UTF-16
- Load File should be placed in the Data folder of the production in the root directory

    ii. <u>Extracted Text and OCR Files (.txt files):</u>

- A single text file for each document containing all the document's pages, in text.
- Pages separated by form feed character (decimal 12, hex 0x0C)
- Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the document
- Text and filenames must be encoded in UTF-8
- Files should be placed in the text/ subdirectory

    iii. <u>Image Files:</u>

- A single 300 DPI, color, text searchable PDF file per document
- Filenames should be of the form: <Bates num>.pdf, where <Bates num> is the BATES number of the first page of the document.
- Files should be placed in the images/ subdirectory
- PDFs shall include searchable text embedded in the document.
- No other information should be provided in image filenames, including confidentiality status.
- Filenames must be encoded in UTF-8

    iv. <u>Native Files:</u>

- Filenames must be unique in the production, unless the content is identical. We recommend naming files by the Bates number of the first page of the associated document
- The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls
- Each filename, including extension, must correspond to the NativePathmetadata field in its corresponding document's row in the load file
- Filenames must be encoded in UTF-8
- Files should be placed in the natives/ subdirectory

1    d.    *Native Format Documents*: Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain Documents to be produced in Native Format. Therefore, the Producing Party shall produce all spreadsheets and audio/video files in native format unless there is an agreement to the contrary. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation.

e.    Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

f.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

g.    The parties must produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

h.    *Bates Numbering*. Each Producing Party must Bates number its production(s) as follows:

    i.    *Document Images.* Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The Bates Numbers shall be enumerated as defined above in Definitions. The Producing Party will use a consistent prefix

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                                                                     PAGE - 6
(Case No. 2:23-cv-1999-BJR)

throughout the matter. Thus, once a party chooses a two-to-eight letter prefix, e.g. ABCD, it shall not later produce a Document using a different prefix, e.g. EFGH. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above. The confidentiality legend shall be "burned" onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

    ii. *Native Format Documents.* In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document.

    iii. *Sort Order.* For Bates numbering, documents will be sorted by their original file path in ascending order, preserving family ordering.

4. <u>Production Method.</u> Production media must always be encrypted and will be sent via FTP or SFTP link provided via email at the time a production letter is emailed, unless the parties agree otherwise. On the occasion in which a particular production is of a size that would make sending it via FTP link impractical, the parties may agree to send encrypted physical media such as a Hard Drive or USB. Production letters will always accompany productions including the name of the matter in which it was produced, the production date, the Bates number range of the material contained in the production, and a short description of its contents. Passwords for encrypted media will be sent separately from the media itself.

5. <u>Duplicates & De-duplication.</u> A Producing Party who has more than one identical copy of an electronic document (i.e., the documents are actual duplicates) need only produce a single copy of that document. A Producing Party need not produce the same electronically stored information in more than one form. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other

custodian field in the database load file. De-duplication will be based on the MD5 or SHA1 hash values of native version of documents, respecting differences in families (i.e. two duplicates attached to different emails will both be provided). The hash value will take into account the document's text and intrinsic metadata (e.g., author, date created, etc.), but not extrinsic metadata values (e.g., custodian, file path). Emails should be systematically and consistently de-duplicated.

6. <u>Document Unitization.</u> When scanning paper documents into Document Images, they shall be unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state.

7. <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

8. <u>Attachment Families.</u> For electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained using the Begin Family and End Family fields of the load file, provided however that the Parties shall only be required to present one level of parent-child relationship. Document Images generated from attachments to emails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent email in their Bates numbering.

9. <u>Metadata Fields.</u> The Producing Party shall produce the metadata information described below with each production and in the format described above. For each Document, the Producing Party shall produce a line in the index file with the following fields, where

1 available. The field naming conventions shall be the following. Datetime metadata will be
2 provided in UTC in a consistent, reasonable, and clearly delimited format. For example, M/d/y
3 H:m. To the extent timezone information is provided for context, it will be provided in a separate
4 loadfile field.

| Field Name | Description | Data Type | Example |
|---|---|---|---|
| Begin Bates | Beginning Bates number of first page of a document | Text | ABCD000001 |
| End Bates | Ending Bates number of last page of a document | Text | ABCD000003 |
| Begin Family | Begin Bates of parent document of family of attachments | Text | ABCD000001 |
| End Family | End Bates of last attachment of family | Text | ABCD000004 |
| Pages | Number of Bates stamped pages for the PDF image each document. | Number | 3 |
| NativePath | Relative file path of native record within production, including filename and extension of native file within the production. Only for documents produced in native format. | Text | .\VOL001\natives\001\ABCD000001.xlsx |
| TextPath | Relative file path of text record within production, including filename and extension of the text file within the production. | Text | .\VOL001\text\001\ABCD000001.txt |
| Placeholder | If Bates stamped document is produced with a placeholder image (values: Y or N) | Text | Y |

| | | | |
|---|---|---|---|
| Redacted | If this document has redactions (values: Y or N) | Text | Y |
| All Custodians | For deduplicated documents, list of all custodians the duplicate copy was collected from. | Text | |
| All Paths | For deduplicated documents, list of all file paths for duplicate copies. | Text | |
| Author | Creator of document | Text | Jones |
| Bcc | Additional blind recipients of an email (Blind Carbon Copy) | Text | bob@acme.com |
| Cc | Additional recipients of email (Carbon Copy) | Text | sue@acme.com |
| Custodian | Name of person from whom documents were collected | Text | Jones |

| | | | |
|---|---|---|---|
| Date Created | Datetime document was created | Datetime | 07/21/1969 02:56:00 |
| Date Modified | Datetime document was last modified | Datetime | 07/21/1969 02:56:00 |
| Date Received | Datetime document was received | Datetime | 07/21/1969 02:56:00 |
| Date Sent | Datetime an email was sent | Datetime | |
| | ion The suffix at the end of the filename indicating file type | Text | .docx .pdf .xlsx |
| Filename | Original filename of native document, including extension | Text | interesting_spread sheet.xlsx |
| File Path | Original source file path, including location, folder name, filename, and extension | Text | media.zip//jones.p st//sent mail/444.eml//inter esting_spreadshee t.xlsx |
| From | Sender | Text | jones@acme.com |
| In Reply To | Message id of email this email is in reply to | Text | |

| Message Id | Unique message id from internet headers | Text | |
|---|---|---|---|
| MD5 Hash | MD5 Hash value of Document | MD5 Hash | |
| SHA1 Hash | SHA1 Hash value of document | SHA1 Hash | |
| Subject | Subject line | Text | Check this out! |
| To | Recipient | Text | mary@acme.com |

10. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

D.  **Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and

archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are duplicative of data that are more accessible elsewhere.

   f. Server, system or network logs.

   g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

   h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

/ / /

/ / /

/ / /

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED this 29th day of January, 2025.

*Barbara J. Rothstein*
_____
Barbara Jacobs Rothstein
U.S. District Court Judge

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER
(Case No. 2:23-cv-1999-BJR)

PAGE - 13